FILED

10/06/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0432

DA 18-0432

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 253N

STATE OF MONTANA,

      Plaintiff and Appellee,

v.

WILLIAM DARRALL MILLER,

      Defendant and Appellant.

---

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DC-16-86
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Ryan P. Archibald, Bitterroot Law, PLLC, Hamilton, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Helena, Montana

          Janet P. Christoffersen, Richland County Attorney, Sidney, Montana

---

Submitted on Briefs: June 24, 2020

Decided: October 6, 2020

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Appellant William Darrall Miller appeals from a May 29, 2018 final judgment entered in the Seventh Judicial District Court, Richland County. We affirm.

¶3      In August 2016, Miller was charged with five counts of felony sexual intercourse without consent and three counts of felony sexual assault for sexually assaulting 12-year-old S.M.J. from August 2014 to February 2015. In November 2016, Miller's attorney filed a motion to suppress Miller's confessions and statements to law enforcement, arguing he should have been given *Miranda* warnings. After conducting an evidentiary hearing and viewing Miller's videotaped interviews, the District Court denied Miller's motion and concluded his statements were not the result of a custodial interrogation and *Miranda* did not apply.

¶4      The parties reached a plea agreement in June 2017. However, at Miller's first change-of-plea hearing, he expressed confusion about the rights he was giving up by pleading guilty. The District Court reiterated all of the individual rights Miller was waiving by pleading guilty, but Miller then expressed confusion regarding what he was pleading guilty to. Therefore, the hearing was continued to allow Miller more time to review the

discovery.  At the subsequent change-of-plea hearing, Miller indicated he could not remember the incident.  The District Court took a break and instructed Miller to review the police reports to refresh his memory.  Ultimately, and pursuant to the plea agreement, Miller pleaded guilty to all eight counts, reserving the right to appeal the court's order denying his motion to suppress.

¶5     The District Court ordered a psychosexual evaluation, which was conducted by Alice Hougardy, a licensed clinical professional counselor.  At Miller's first sentencing hearing, Hougardy testified that Miller had a "below average" composite IQ score. Defense counsel requested a second examination to review Miller's intellectual functioning to determine whether Miller qualified for the exception to mandatory minimum sentences set forth in § 46-18-222(2), MCA.  The exception applies when a defendant's "mental capacity, at the time of the commission of the offense for which the offender is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution."

¶6     Dr. Dee Woolston, a licensed clinical psychologist, completed a second evaluation of Miller and diagnosed Miller with "Intellectual Disability, mild" and "Dependent personality traits."  At the exceptions hearing held in February 2018, the District Court heard testimony from both Hougardy and Dr. Woolston.  The District Court expressed concern about Miller's capacity to have entered his guilty pleas and asked the parties to submit post-hearing briefs to state their positions as to whether there remained any concerns with Miller's competency when he pleaded guilty.  In their briefs and at the

3

subsequent hearing, neither party argued that Miller was not competent when he entered his guilty pleas. However, defense counsel did maintain that Miller's intellectual functioning should constitute an enumerated exception to the mandatory minimums and argued as such at sentencing.

¶7 After hearing argument and testimony, the District Court found that Miller was competent to enter his plea and the exception to the minimums was met under § 46-18-222(2), MCA. The following sentence was imposed: for Counts I-V (sexual intercourse without consent), the court imposed five, consecutive, 24-year terms of imprisonment at the Montana State Prison (MSP); for Counts VI-VIII (sexual assault), the court imposed three, concurrent, 20-year terms of imprisonment at MSP, to run concurrently to the sentence in Counts I-V.

¶8 Miller first argues that his due process rights were infringed when the District Court did not order a third evaluation to determine whether he was competent to enter his guilty pleas, and erred by failing to enter a finding as to his competency after it was discovered that he suffered from a mental disability and low IQ. We hold that Miller was afforded due process throughout his proceedings, and the District Court did not err in finding Miller competent to enter his guilty pleas.

¶9 This Court's review of constitutional issues of due process involves questions of law and our review is plenary. *State v. Pyette*, 2007 MT 119, ¶ 11, 337 Mont. 265, 159 P.3d 232. The standard of review for finding that a person is competent to stand trial is "whether substantial evidence supports the District Court's decision that the defendant was fit to

proceed to trial." *State v. Bartlett*, 282 Mont. 114, 119, 935 P.2d 1114, 1117 (1997) (citing *State v. Santos*, 273 Mont. 125, 130, 902 P.2d 510, 513 (1995)). "Due process guarantees that every person be given an opportunity to 'explain, argue, and rebut' any information that may lead to a deprivation of life, liberty, or property." *State v. Johns*, 2019 MT 292, ¶ 22, 398 Mont. 152, 454 P.3d 692; *see also State v. Bostwick*, 1999 MT 237, ¶ 16, 296 Mont. 149, 988 P.2d 765 (citing *Bartlett*, 282 Mont. at 120, 935 P.2d at 1117). "The key to due process is notice and an opportunity to be heard." *Johns*, ¶ 22.

¶10    Miller faults the District Court for not ordering a third evaluation to consider whether his pleas had been knowingly, voluntarily, and intelligently entered. While the District Court questioned Miller's competency during sentencing, the court later heard testimony from Hougardy and Dr. Woolston about Miller's mental competency. Moreover, Miller's counsel specifically maintained that he did not think Miller was unfit to proceed nor incompetent to enter his guilty pleas. Miller was afforded fundamentally fair procedures to address his competency throughout the proceedings when the court ordered a second evaluation; observed Miller's interviews and interaction with police; was presented with expert testimony from both Hougardy and Dr. Woolston regarding Miller's mental capacity; and received supplemental briefing on the issue of Miller's competency from the parties. Miller had several opportunities to assert that his competency remained in question or to ask to withdraw his guilty pleas. We conclude Miller was not denied due process when the District Court did not order a third evaluation.

¶11 We further hold the District Court's finding that Miller was competent to stand trial and to enter his guilty pleas was not clearly erroneous. Miller's counsel repeatedly explained to the court that he never believed Miller was incompetent, only that he believed Miller's intellectual functioning was relevant as an exception to mandatory minimums. Miller's counsel maintained this position throughout the proceedings. After watching Miller's interviews with law enforcement, interacting with him during the change of plea hearings, reading Miller's two psychological evaluations, and hearing testimony from Hougardy and Dr. Woolston, the District Court determined that the issue of Miller's competence was only relevant to the exception to the mandatory minimums. The District Court had more than enough information to determine that Miller understood the proceedings and could assist in his own defense. We conclude the District Court's finding that Miller was competent to enter into his guilty pleas was not clearly erroneous.

¶12 Next, Miller argues that the District Court incorrectly sentenced Miller under § 45-5-503(4)(a)(i), MCA (2015), instead of § 45-5-503(4)(a)(i), MCA (2017). The legislature made ameliorative changes to the mandatory minimum without a specific saving clause in 2017, and Miller maintains that the legislature intended the changes to apply to defendants in Miller's situation. However, § 45-5-503(4)(a)(i), MCA (2017), was part of House Bill 133, and this Court has previously held that the provisions setting forth the effective and applicability dates of House Bill 133 did not apply to offenses committed prior to July 1, 2017. *State v. Wolf*, 2020 MT 24, ¶ 10, 398 Mont. 403, 457 P.3d 218. Because S.M.J. was less than 12-years-old at the time of the offense and Miller was over

18, the District Court was required to sentence Miller under § 45-5-503(4)(a)(i), MCA (2015), which imposes a mandatory minimum sentence of 25 years without parole. After Miller's counsel argued that Miller was entitled to an enumerated exception to the mandatory minimums due to his intellectual functioning, the District Court concluded that an exception to the mandatory minimum applied and imposed five, consecutive, 24-year terms of imprisonment at MSP for the five counts of sexual intercourse without consent, and three, concurrent, 20-year terms of imprisonment at MSP for the three counts of sexual assault. Because the District Court found an exception to the mandatory minimum sentence and did not impose 25 years without parole, the District Court did not exceed its statutory authority. *Wolf*, ¶ 7. We affirm the sentence imposed by the District Court. Although the District Court did not issue a specific finding regarding Miller's mental capacity, it is clear the basis for the court's finding an exception was, in fact, Miller's impaired mental capacity.

¶13 Finally, Miller argues he received ineffective assistance from trial counsel, asserting there was no plausible justification for counsel not to have filed a second motion to suppress Miller's statements on the basis of impaired mental capacity. Miller asserts that based on his mental disability and low intellectual functioning, his statements made to police were involuntary.

¶14 Ineffective assistance of counsel (IAC) claims present mixed questions of law and fact that we review de novo. *State v. Hatfield*, 2018 MT 229, ¶ 18, 392 Mont. 509, 426 P.3d 569. This Court "review[s] IAC claims on direct appeal if the claims are based solely on

7

the record." *State v. Ward*, 2020 MT 36, ¶ 15, 399 Mont. 16, 457 P.3d 955. We have adopted the *Strickland*, two-prong test to determine whether counsel was ineffective. *State v. Roundstone*, 2011 MT 227, ¶ 32, 362 Mont. 74, 261 P.3d 1009 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)). First, the defendant must demonstrate that counsel's performance fell below the objective standard of reasonableness or was defective. *State v. Frasure*, 2004 MT 305, ¶ 11, 323 Mont. 479, 100 P.3d 1013. Second, the defendant must show that there was a reasonable probability that the results of the proceeding would have been different. *Frasure*, ¶ 11. To prevail on an IAC claim, the defendant must satisfy both prongs of the test. Thus, if a defendant makes an insufficient showing regarding one prong of the test, there is no need to address the other. *Whitlow v. State*, 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861. With respect to the first prong, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance exists." *Whitlow*, ¶ 15 (quoting *Strickland* 466 U.S. at 689, 104 S. Ct. at 2065).

¶15 We conclude there is sufficient evidence in the record to resolve this issue on direct appeal and hold that trial counsel was not ineffective. The District Court found that Miller's confession was given freely, voluntarily, and without compulsion or inducement of any sort. The District Court found Miller was 59-years-old at the time of the offense, employed, and had significant experience with the criminal justice system. The mood of the interview was relaxed and conversational and Miller was advised he was free to go at any time and was not under arrest. He was provided with water to drink and offered breaks.

8

The officers did not pepper him with rapid questions, and Miller did not exhibit a lack of understanding of the process. Based on these findings, the District Court found that Miller's statements were voluntary.

¶16    Given the substantial evidence demonstrating Miller's confession was voluntary, as well as rulings made by the District Court on the issue, a motion asserting that Miller's statements to law enforcement were involuntary would have lacked merit. Accordingly, defense counsel did not perform deficiently when a second motion to suppress on the basis of Miller's competency was not forthcoming. On the record here, counsel not pursuing a second motion to suppress was both reasonable and within the wide range of acceptable professional conduct.

¶17    Further, we note that Miller could not have demonstrated prejudice because the second motion to suppress would have been made following sentencing and, therefore, untimely. Miller had already pleaded guilty and reserved only the right to appeal his first motion to suppress. Therefore, there is also not a reasonable probability that the results of the proceeding would have been different, as is required by the second prong under *Strickland*. Because plausible explanations exist for defense counsel's decision not to file a second motion to dismiss and the improbability that the motion would have been successful, neither prong required to establish an IAC claim has been met, and therefore the claim fails.

¶18     We conclude Miller was afforded due process; the District Court's finding as to Miller's competency was not clearly erroneous; Miller's sentence under Montana Code Annotated 2015 was legal; and Miller's defense counsel was not ineffective.

¶19     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE